[No. 25208. Department One. March 7, 1935.]

OTTO SCHMIDT, *Respondent*, v. DIRK VAN WOERDEN et al., *Appellants*.[1]

*Wright, Jones & Bronson* and *W. L. Grill,* for appellants.

*Rummens & Griffin,* for respondent.

GERAGHTY, J.—The plaintiff sued to recover from the defendants sums alleged to be due him for services as ranch foreman and as assignee of the claims of other farm laborers employed by defendants on the ranch. The complaint also included an uncontested

[1]Reported in 42 P. (2d) 3.

claim for a small sum advanced by plaintiff on defendants' account for merchandise. The case was tried to the court without a jury, and from findings and judgment in favor of plaintiff, the defendants appeal.

The appellants purchased a ranch in the Ephrata district, embracing about two hundred acres, one hundred of which was in cultivation, forty acres being in a bearing apple orchard. The respondent had been employed on the ranch, as foreman, by the former owner at a monthly wage of one hundred dollars, and there was due him five hundred dollars for five months' service. The respondent agreed with appellant Dirk Van Woerden to remain on the ranch as foreman, for which he was to receive one hundred dollars a month and board. Van Woerden also agreed to pay respondent, in addition to his regular monthly wage, the five hundred dollars owing by the former owner if a good apple crop was produced in the year 1929.

There is no dispute between the parties as to the employment and the rate of wages or the agreement to pay the five hundred dollars. But the appellants contend that it was agreed that the respondent would have to look to the proceeds of the crops, after the payment of all operating expenses, for his pay, while the respondent contends that payment was not so conditioned. Appellants also contend that the 1929 apple crop was not a good one, and that they were not, therefore, under obligation to pay the sum due from the former owner.

The court found that respondent was entitled to payment for thirty-six months, beginning February 1, 1929, at the rate of one hundred dollars per month, less $470.62 aggregating sums applied by respondent to his own use out of advances made to him by appellants for ranch expenses. The court also awarded respondent judgment for the five hundred dollars due

from the former owner, as well as $736.25 on account of the assigned claims. The judgment was entered "against defendants and each of them and their marital community."

Appellants assign as error (1) the court's finding that they were indebted to respondent in any sum except the item of $34.02 advanced for merchandise; (2) the use by respondent, while testifying with respect to the assigned claims, of a memorandum to refresh his memory; and (3) the entry of a separate judgment against the appellant Emma Van Woerden.

The testimony of the parties was in direct conflict upon the question whether respondent had agreed to make the payment of his wages dependent upon the net profits of the crops. While the record is not wholly clear as to the financial returns from the ranch, we think it may be assumed that the farm and orchard operations were not profitable.

The appellant Dirk Van Woerden conducted a dairy near Seattle, and was unfamiliar with the orchard business or general farm operations. The orchard was in a district where irrigation was extremely expensive and apples could be profitably produced only under extremely favorable conditions. Appellant Dirk Van Woerden testified:

"Q. What discussion did you have at that time about salary or compensation to him [Schmidt]? A. Well, at that time I asked him how much he wanted to run the ranch, and he said he wanted one hundred dollars a month, and then I asked him if he could make the ranch pay, and he says, 'Sure, I can make it pay. I can make anything pay.' Q. What did you then say to him? A. Well, I said, 'If you can make it pay, that is all right.' . . . Q. Subsequent to your first meeting with the plaintiff in this case, Mr. Schmidt, did you have some months or six weeks after that any conversation with him about compensation to be received? A. Yes, I told Otto—I said, 'Otto, your

money is to come out of the crop,' I says, 'I cannot be milking cows on the coast for this ranch.' . . . Q. . . . What did Mr. Schmidt say about that? A. Oh, he said, 'I understand that.' And I told Otto every—not every time, but I told him, 'Otto, you have got to make that ranch pay to get your money.' Q. What did he say? A. 'I understand that,' he says. Q. What was the occasion for your telling him that? A. Well, to go careful with the money. I wanted Otto to get money out of it.''

Mrs. Van Woerden, when asked if she had been present at any conversation between her husband and the respondent, answered:

''Oh, yes, I heard them quite often in the yard when my husband was telling him to be careful, you know, with the money, and with the crop, have a good crop coming off there so his money going to come out.''

The respondent testified that he had been on the ranch four years before it was purchased by Van Woerden, and that Van Woerden had employed him to operate the ranch as foreman and had agreed to pay him one hundred dollars a month. He denied that he had agreed to have the payment of his wages conditioned upon the profits of the ranch. When asked by his attorney why he had not pressed for payment, he said:

''Well, I trusted Mr. Van Woerden, and he promised he would pay me, and one time he had to buy some cows, and so I had a little money to go on, so I never pressed Mr. Van Woerden. I had confidence in him.''

He testified that he had written to Van Woerden for money several times, and there are in the record letters received by him from Van Woerden in which the latter regretted his inability to send money and promised to do so later. The appellants contend that the expressions in these letters had relation to other transactions, and this could well be, because appellants

remitted money to respondent from time to time to meet expenses. At the close of the first year's operations, the respondent sent a blank note to Van Woerden requesting that he sign and return it to him so that he would have something to show for his wages. The appellant did not sign the note.

As we read the record, it would not warrant a finding that the evidence on this branch of the case preponderates against the court's finding. The probabilities are against appellants' contention. Respondent had no interest in the ranch; he had nothing to look forward to except his wages. It is true that the rate of pay agreed on was liberal, and appellants contend that it was made so to compensate for the risk respondent was taking. But he had been paid at that rate before, and considering the size of the orchard and the responsibilities of his position, the rate of pay was not exceptionally high at the time the contract was entered into. The appellants' own testimony is not decisively conclusive against respondent's contention. Doubtless, respondent was told that he was expected to make the ranch pay and to make his wages out of it, but the language used would suggest that these statements were in the nature of admonitions to spur respondent's diligence rather than a definite notice that, if the ranch did not show a profit, wages would not be paid. We are of the opinion that the court's finding on this branch of the case should stand.

On the issue arising out of appellant's agreement to pay the five hundred dollars owing by the former owner, we are of the opinion that the appellants should have prevailed. The agreement was that the appellants would pay if the orchard produced a good crop in 1929. The expression ''good crop'' itself is indefinite, and the testimony is meager with relation to

the extent of the crop or its financial result. We think the respondent failed to sustain the burden of proof on this issue, and that the court was in error in awarding judgment for this sum.

■ There is no merit in appellant's contention that the court committed error in permitting respondent, for the purpose of refreshing his memory, to refer to a written memorandum taken by him from the book in which he had kept an account of the time of the employees whose claims had been assigned to him for collection. The memorandum was not offered in evidence nor used as proof of the facts.

"A witness may be allowed to refresh his memory by looking at a printed or written paper or memorandum, and, if he thereby recalls a fact or circumstance, he may testify to it. It is not the memorandum which is evidence, but the recollection of the witness." *Commonwealth v. Jeffs*, 132 Mass. 5.

■ We think appellants' objection to the form of the judgment, as it affects Emma Van Woerden, well taken. There is nothing in the record warranting a finding that she made an independent contract with the respondent. In so far as her interest in the community property is concerned, she is bound by the acts of her husband, but she is not bound individually. *Cunningham v. Zane*, 139 Wash. 176, 245 Pac. 913.

The case is remanded to the superior court, with direction to reduce the judgment by the sum of five hundred dollars, and that, as so reduced, the judgment bind appellant Emma Van Woerden only to the extent of her interest in the community property.

MILLARD, C. J., TOLMAN, BEALS, and MAIN, JJ., concur.